# EXHIBIT A

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**RETURN**

PATRICK MORRISON

V.                          12-C-181          JUDGE DAVID H. SANDERS
BANK OF AMERICA, N.A. ET AL
6400 LEGACY DRIVE
PLANO          TX   25313

LORRAINE POWELL
43 NORBECK DRIVE
BUNKER HILL      WV  25413

To the Above-Named Defendant (s):
IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and
required to serve upon          STEPHEN G. SKINNER, ESQ.
Plaintiff's Attorney, whose address is PO BOX 487
                                CHARLES TOWN, WV 25414
an answer, including any related counterclaim you may have, to the complaint
filed against you in the above styled civil action, a true copy of which is
herewith delivered to you.  You are required to serve your answer within 30
days after service of this summons upon you, exclusive the day of service.
If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint and you will be thereafter barred from
asserting in another action any claim you may have which must be asserted
by counterclaim in the above style civil action.
DATED:  05/14/12

                          LAURA E. RATTENNI, CLERK
                          JEFFERSON COUNTY CIRCUIT COURT

                          BY: _____
                                        DEPUTY CLERK

DEFENDANT'S
EXHIBIT
A-1

M01   k   $40.00   05/16/2012   997503

WV Secretary of State
................................................
Receipt #:                        997504
Station ID:                          M01

List Of Services
................................................
sp s   s   12c101                  $20.00

Total:                             $20.00

Payment Details:.
................................................
skinner law firm
k  40983                           $20.00
................................................

Original Transaction Date:    05/16/2012

Thank You For Your Business!

Page 1 of 2

**\*\* THIS IS AN AUTOMATED E-MAIL MESSAGE. \*\***
**\*\* If you received this message in error, please notify the WV Secretary of State's Office by replying to this message. \*\***

This notification is sent to alert you that a return receipt has been received.
Please find the return receipt in the body of this message below.

To :

BANK OF AMERICA, N.A.
6400 LEGACY DRIVE
PLANO, TX 25313

RECEIVED

MAY 28 2012

JEFFERSON COUNTY
CIRCUIT CLERK

The letter was sent on 5/16/2012

Civil Action Number: 12-C-181
Restricted: N
Certified Number : 9171923790001000669219

This information supplied from Pitney Bowes Distribution Solutions

6/5/2012

**DEFENDANT'S EXHIBIT**
A - 2

Page 2 of 2



UNITED STATES
POSTAL SERVICE

Date Produced: 05/28/2012

WV SECRETARY OF STATE

The following is the delivery information for Certified Mail™ item number 7192 9790 0010 0066 9219. Our records indicate that this item was delivered on 05/21/2012 at 1:40 p.m. in PLANO, TX, 75024. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 3418879-47695721

From: 304-728-3398      To: 13043449692      Page: 33/41      Date: 9/26/2012 3:47:48 PM

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E
Charleston, WV  25305



9171 9237 9000 1000 6692 19

**RECEIVED**

**MAY 2 1 2012**

JEFFERSON COUNTY
CIRCUIT CLERK

**Natalie E. Tennant**
Secretary of State
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

ControlNumber:                         336224

Defendant:        Bank of America, N.A.

County:                              19
                                   5/16/2012
Civil Action:                     12-C-181

Laura E. Rattenni, Circuit Clerk
Jefferson County Circuit
PO Box 1234
Charles Town WV 25414

I am enclosing:

| | | |
|---|---|---|
| ____ summons | ____ affidavit | __1__ summons and complaint |
| ____ notice | ____ answer | ____ summons and verified complaint |
| ____ order | ____ cross-claim | ____ summons and amended complaint |
| ____ petition | ____ counterclaim | ____ 3rd party summons and complaint |
| ____ motion | ____ request | ____ notice of materialmans lien |
| ____ suggestions | ____ notice to redeem | ____ notice of mechanic's lien |
| ____ interrogatories | ____ request for production | ____ re-issue summons and complaint |
| ____ discovery | ____ request for admissions | ____ subpoena duces tecum |
| ____ suggestee execution | ____ notice of uim claim | __1__ Combined Discovery Request |
| ____ subpoena | ____ writ | |
| ____ stipulation | ____ writ of mandamus | |

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact.  According to law, I have
accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in your name and on behalf as your attorney-in-fact.  Please address any questions about this document directly
to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

Natalie E. Tennant

Natalie E. Tennant
Secretary of State

RECEIVED

MAY 1 1 2012

JEFFERSON COUNTY
CIRCUIT CLERK

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

    Plaintiff,

v.                    Civil Case No. 12-C- 151

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

    Defendants.

## COMPLAINT

    Plaintiff Patrick Morrison, a homeowner, by and through counsel, brings this action against his mortgage loan servicer Bank of America and his tenant-in-common Lorraine Powell. Plaintiff states as follows:

### JURISDICTION AND VENUE

1.    Plaintiff Patrick Morrison is a West Virginia citizen.

2.    At all times relevant to this action, Plaintiff was a "consumer" as defined by W.Va. Code §46A-2-122.

3.    Upon information and belief, Defendant Lorraine Powell is a West Virginia citizen.

4.    Defendant Bank of America ("BOA") is a corporation doing business in West Virginia with its principal place of business at 4500 Park Granada, Calabassas, California and in Jefferson County. Defendant BOA makes and services home loans nationally, including throughout West Virginia.

5.    At all times relevant to this action, Defendant BOA was a "debt collector" as defined by W.Va. Code §46A-2-122.



DEFENDANT'S
EXHIBIT
A-3

6.        Venue is proper in the Circuit Court of Jefferson County, West Virginia
Defendant BOA does business in Jefferson County.

## FACTS

7.        On August 15, 2006, Plaintiff and his then domestic partner, Lorraine
Powell, signed a first Deed of Trust to secure financing in the amount of $287,500.00 and
a second Deed of Trust to secure financing in the amount of $71,850.00 for the purchase
of a home at 228 McWharton Way, Bunker Hill, Berkeley County, West Virginia ("the
home"). (Exhibits A and B).

8.        The Lender under both Deeds of Trust was Monocacy Home Mortgage,
LLC.

9.        Plaintiff and Defendant Powell are each identified as "Borrowers" under
the terms of the first Deed of Trust. The first Deed of Trust further identifies Plaintiff
and Defendant Powell as "joint tenants." (Exhibits A & B).

10.       Both Deeds of Trust secured Notes obligating Plaintiff and Defendant
Powell to repay the sums borrowed for purchase of the home.

11.       Plaintiff and Defendant Powell lived together in the home, and each paid a
portion of the mortgage payment each month.

12.       The loans were assigned to The Bank of New York Mellon on or around
March 24, 2011.

13.       Upon information and belief, Defendant BOA was the servicer of record
for Plaintiff's loans in 2010, 2011, and 2012

14.       The relationship between Plaintiff and Defendant Powell ended, and
Defendant Powell moved out of the home in 2007.

2

15.     Defendant Powell stopped making payments on the loan.

16.     Plaintiff struggled to continue making payments on the loans on his own.

17.     Plaintiff's ability to make payments on the loan was further challenged when surgeries for injuries resulting from a car accident forced him to miss more than six months of work. Plaintiff only income during that time was workers compensation.

18.     Plaintiff returned to work, but, as the economy deteriorated, he lost his job in the construction industry, and was again unable to make full payments on his home loans.

19.     On April 15, 2011, Plaintiff received correspondence from a debt collector, Samuel I. White, P.C., stating that he should contact them immediately to reinstate his home loan.

20.     Upon inquiry, Plaintiff was told that the alleged past due debt on the loans was $14,247.00.

21.     On July 14, 2011, Plaintiff mailed a check in the amount of $14,247.00 to Defendant to BOA bring his loan payments current.

22.     Under the first Deed of Trust,

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights . . . but Lender is not obligated to apply such payments at the time such payments are accepted . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to the Borrower . . . such funds will be applied to the outstanding principal balance under the note . . .

(Exhibit A).

3

23.     Moreover, the first Deed of Trust specifies that payments "shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [Funds for Escrow Items]." (Exhibit A).

24.     Despite the requirements under the Deed of Trust, Defendant BOA used a portion of Plaintiff's $14,247.00 payment to escrow items. Defendant BOA paid $1,588.69 for an outstanding hazard insurance bill and $841.62 for outstanding county taxes, a total of $2,430.31. Defendant BOA held $12,639.44 of the payment without applying it at all.

25.     On August 15, 2011, Plaintiff received a Notice of Trustee's Sale from Seneca Trustees, Inc., stating that the loan was accelerated and that a Trustee's Sale would be held on September 6, 2011. This correspondence confused Plaintiff, who believed he had brought his loan current with the prior payment of $14,247.00.

26.     Plaintiff again inquired about the amount allegedly deficient on his loan and was told that $7,291.00 would bring him current.

27.     On August 24, 2011, Defendant BOA reversed/refunded to Plaintiff $12,639.44, alleging that the amount was not sufficient to cover the delinquency on the loan.

28.     On August 31, Plaintiff withdrew $7,791.00 from his 401K account. He incurred a tax penalty in the amount of $865.67 for this withdrawal. Plaintiff forwarded the $7,791.00 to Defendant BOA.

29.     On September 13, 2011, Defendant BOA posted Plaintiff's payment of $7,791.00 to Plaintiff's account.

4

30.     On October 5, 2011, Defendant BOA reversed/refunded the amount of
$7,791.00 to Plaintiff, again alleging that the amount was insufficient to cover the amount
delinquent on the loan.

31.     On November 9, 2011, Plaintiff's bank received a "stop payment" order
from Defendant BOA on the check for $12,639.44.   (Exhibit C).

32.     On November 9, 2011, Plaintiff's bank also received a "stop payment"
order from Defendant BOA on the check for $7,791.00.   (Exhibit D).

33.     Plaintiff attempted to deposit these funds into his checking account, but
the checks were refused.

34.     Plaintiff incurred fees for the return of these checks.

35.     On October 19, 2011, Defendant BOA posted payments from Plaintiff in
the amount of $20,430.44, the sum of the two reversal checks, claiming that Plaintiff's
loan was then current through October 1, 2011.

### COUNT ONE
### Breach of Contract

36.     Plaintiff herein incorporates all allegations above.

37.     Plaintiff and Defendant Powell were borrowers/co-obligors under the
terms of both the Deed of Trust and the Note secured by the Deed of Trust.

38.     Plaintiff and Defendant Powell were jointly and severally liable for the
sums borrowed for purchase of the home.

39.     Defendant Powell breached the contract when she refused to meet her
obligation under the Deeds of Trust and the Notes.

40.     Plaintiff is entitled to contribution from Defendant Powell for the amount
that he has paid towards satisfaction of the debt for purchase of the home.

5

41.        Plaintiff seeks to quiet title under West Virginia law.

### COUNT TWO
### Violations of the West Virginia Consumer Credit and Protection Act

42.        Plaintiff herein incorporates all above allegations.

, 43.        In August 2011, Defendant BOA told Plaintiff that $7,791.00 would cure
any deficiency on his home loan; however, soon after soliciting that amount from
Plaintiff, Defendant BOA reversed/refunded $12,639.44 to Plaintiff.

44.        When he remitted the $7,791.00 to Defendant BOA, Plaintiff had no way
of knowing that Defendant BOA had taken – or was about to take – actions to throw
Plaintiff into default again.

45.        By reversing $12,639.44 to the Plaintiff after having solicited the
additional $7,791.00, Defendant BOA engaged in deceptive or misleading representations
concerning the amount required to bring his home loan current. These deceptive or
misleading representations violate W.Va. Code §46A-2-127.

46.        Moreover, Defendant BOA's actions were unreasonable, oppressive,
and/or abusive towards the Plaintiff in violation of W.Va. Code §46A-2-125.

47.        Defendant BOA further violated W.Va. Code §46A-2-125 by stopping
payment on the two reversal checks it issued to Plaintiff without telling Plaintiff that it
intended to do so.

48.        As a result of Defendant BOA's actions, Plaintiff has been annoyed,
inconvenienced, harassed, bothered, upset, and otherwise caused indignation.

49.        Plaintiff is entitled to actual and statutory damages under the West
Virginia Consumer Credit and Protection Act, to include attorney fees.

6

## COUNT THREE
### Negligent Loan Servicing

50.     Plaintiff herein incorporates all above allegations.

51.     Defendant BOA negligently provided an incorrect reinstatement amount to
Plaintiff on at least one occasion.

52.     Defendant BOA deducted and reversed/refunded $12,639.44 from
Plaintiff's loan account after including that amount in its calculation of the reinstatement
amount required to cure Plaintiff's alleged default.

53.     Moreover, Defendant BOA stopped payment on the two reversal checks it
issued to Plaintiff without informing Plaintiff it had done so, causing Plaintiff both
financial loss and embarrassment.

54.     Plaintiff has suffered damages arising from Defendant BOA's negligence

## COUNT FOUR
### Negligent Infliction of Emotional Distress

55.     Plaintiff herein incorporates all above allegations.

56.     Defendant BOA's actions caused Plaintiff extreme confusion and distress
regarding the status of his loan and his future living arrangements.

57.     As a result of the Defendant BOA's wrongful conduct, Plaintiff suffered
severe emotional distress, humiliation, and stress, and Plaintiff is entitled to all damages
flowing therefrom.

## COUNT FIVE
### Breach of Contract

58.     Plaintiff herein incorporates all above allegations.

59.     Defendant BOA was bound by the terms of the Deed of Trust to apply
Plaintiff's payments, partial or otherwise, in a specific order.

7

Case 3:12-cv-00137-GMG   Document 1-1   Filed 11/20/12   Page 14 of 68   PageID #: 27
From: 304-728-3395      To: 13044140202      Page: 9/10   Date: 9/19/2012 10:31:07 AM

60.     Defendant BOA failed to follow the terms of the Deed of Trust when it deducted funds for escrow items from Plaintiff's payment of $14,247.00.

61.     Plaintiff incurred additional expenses and suffered annoyance and inconvenience as a result of Defendant BOA's actions.

### COUNT SIX
**Breach of the Covenant of Good Faith and Fair Dealing**

62.     Plaintiff herein incorporates all above allegations.

63.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will impair, destroy, or injure the rights of the other party under the agreement. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

64.     Defendant BOA failed to follow the terms of the Deed of Trust in its application of payments to Plaintiff's loan account, thus causing Plaintiff confusion and misunderstanding of his loan payment status.

65.     Defendant BOA additionally reversed/refunded a payment to Plaintiff that they had implicitly accepted when they informed him that his loan account was delinquent by $7,791.00.

66.     As a result of Defendant BOA's breaches of this covenant, Plaintiff has suffered sever emotional distress, humiliation, and stress, along with financial loss.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. Actual damages;

B. A quitclaim deed vesting full ownership in the Plaintiff

8

From: 304-728-3398    To: 13044740262    Page: 10/10    Date: 9/19/2012 10:31:07 AM

C.  Statutory damages under the West Virginia Consumer Credit and

Protection Act;

D.  Attorneys fees and costs;

E.  Reasonable litigation expenses, including attorneys fees, under the West

Virginia Consumer Credit and Protection Act;

F.  Compensatory damages;

G.  Cancellation of the underlying Debt; and

H.  Such other relief as the Court deems just and equitable.

Plaintiff demands **A TRIAL BY JURY.**

PATRICK MORRISON
By Counsel

Stephen G. Skinner (W.Va. Bar No. 6725)
Skinner Law Firm
P.O. Box 487
Charles Town, WV 25414
(304) 725-7029/Fax: (304) 725-4082
sskinner@skinnerfirm.com

9

MORRISON, Patrick
Powell, LORRAINE
8/15/2006
4231 UU

RECORD AND RETURN TO:
HOMEBUILDERS FINANCIAL NETWORK, INC.
7900 MIAMI LAKES DRIVE WEST, SUITE 100
MIAMI LAKES, FL 33016

[Space Above This Line For Recording Data]

## DEED OF TRUST

MIN 1002876-0129585995-0
Loan ID # 129585995

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **August 15th, 2006**, together with all Riders to this document.

(B) "Borrower" is PATRICK MORRISON AND LORRAINE POWELL, HUSBAND AND WIFE AS JOINT TENANTS *LEP* *PSM*

. Borrower's mailing address is 228 MCWHARTON WAY, BUNKER HILL, WEST VIRGINIA 25413. Borrower is the trustor under this Security Instrument.

(C) "Lender" is MONOCACY HOME MORTGAGE, LLC
. Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of MARYLAND . Lender's address is 75 THOMAS JOHNSON DRIVE, SUITE K, FREDERICK, MD 21702

(D) "Trustee" is STEPHEN M. MATHIAS
. The Trustee resides at BERKELEY
County, West Virginia.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated August 15th, 2006 . The Note states that Borrower owes Lender Two Hundred Eighty Seven Thousand Five Hundred and no/100- - - - - - - - - - - - - - - Dollars (U.S. $ 287,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 1st, 2036 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☒ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
- ☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]:
- ☐ 1-4 Family Rider   ☐ Biweekly Payment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

*1st*

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
WVCbhl1 - 01232001

Initials: *LEP PSM*

Form 3049 1/01  (page 1 of 11 pages)
www.MortgageBankingSystems.com

**EXHIBIT**

**A**

Loan ID # 129585995

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower hereby irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the        County        of        BERKELEY        :
                 [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

which currently has the address of        228 MCWHARTON WAY,        BUNKER HILL
                                              [Street]                    [City]
West Virginia    25613    ("Property Address"):
               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: LEL PPM

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3049  1/01  (page 2 of 11 pages)
WVCMM2 - 01232001                                                            www.MortgageBankingSystems.com

Loan ID # 129585955

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

IN TRUST FOREVER to secure the payment of the Note which is payable to the order of Lender, the beneficial owner of said Note, at its principal office at the top of this Security Instrument, the residence of said beneficial owner, and to secure also any and all extensions, modifications and renewals of said Note, or any part thereof, however changed in form, manner or amount, and all other indebtedness of Borrower to Lender or Trustee hereunder.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c), amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for

Initials: _LEP GSM_

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
WVCM013 - 01232001

Form 3049 1/01  (page 5 of 11 pages)
www.MortgageBankingSystems.com

Loan ID # 129585995

Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
WVCbM4 - 01232001

Initials: _LEP_ _DS_ _M_

Form 3049 1/01  (page 4 of 11 pages)
www.MortgageBankingSystems.com

Loan ID # 129585995

amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest within thirty days after the date of the Notice of Placement of Insurance sent by Lender pursuant to W. Va. Code § 46A-3-109a(c).

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspection of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
WVCMSS - 01202001

Initials: _LEP Gs m._

Form 3049 1/01  (page 5 of 11 pages)
www.MortgageBankingSystems.com

Loan ID # 129585995

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
WVCMM6 - 01231001

Initials: LEB PS

Form 3049  1/01  (page 6 of 11 pages)
www.MortgageBankingSystems.com

Loan ID # 129585995

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations

Loan ID # 129585995

and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
WVCMG3 - 012312061

Initials: LEP PS m
Form 3049 1/01 (page 8 of 11 pages)
www.MortgageBankingSystems.com

Loan ID # 129585395

Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligation secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of

Initials: _LEP_ _PSm_

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3049 1/01 (page 9 of 11 pages)
WVCMM9 - 01231001          www.MortgageBankingSystems.com

Loan ID # 129568995

Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Borrower hereby waives personal service of notice of any sale made hereunder, upon Borrower, its devisees, agents, successors or assigns, and also waives the posting of notice of sale at the courthouse. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees as permitted by Applicable Law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In the event that foreclosure proceedings are instituted hereunder but are not completed, Trustee shall be reimbursed for all costs and expenses incurred by it in commencing such proceedings; and all costs and expenses so incurred by Trustee, together with interest thereon until paid at the Note default rate shall be and become a part of the obligations secured hereby and shall be collectible as such.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. Beneficiary's Address. The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated on the first page of this Security Instrument.

25. Attorneys' Fees. The provisions in this Security Instrument for Borrower to pay "attorneys' fees" shall be void.

26. Notice of Trustee's Sale. Any notice of other liens which may be given to Lender pursuant to W. Va. Code § 38-1-4, shall be effective upon the receipt of such notice, in writing, through the regular United States mail, postage prepaid, addressed to Lender at its address set forth on the face of this Security Instrument.

A copy of any notice of Trustee's sale under this Security Instrument shall be served on Borrower by certified mail, return receipt requested, directed to Borrower at the address stated above or such other address given to Lender in writing by Borrower, subsequent to the execution and delivery of this Security Instrument.

27. Trustees and Substitution of Trustees. It is hereby expressly covenanted and agreed to all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustees herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this Security Instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall recite the parties to, and the book and page of record of, this Security Instrument, and the description of the real property herein described, which instrument, executed and acknowledged by Lender and recorded in the office of the Clerk of the County Commission of the County wherein the Property is situate, shall be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, and notice of such proper substitution and appointment to all parties in interest.

The Trustees, or either of them or the survivor thereof, may act in the execution of this trust and in the event either of the Trustees shall act alone, the authority and power of the Trustee so acting shall be as full and complete as if the powers and authority granted to the Trustees herein jointly had been granted to such Trustee alone. Either or both of the Trustees are hereby authorized to act by agent or attorney in the execution of this trust, and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

28. Waiver of Homestead Exemption. Borrower hereby waives all right of homestead exemption in the Property.

29. Lender's Purchase of Property Insurance. Unless Borrower provides Lender with evidence of the insurance coverage required and described above, Lender may purchase insurance at Borrower's expense to protect its interest in Borrower's Property. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by this Security Instrument. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement

Initials: LEP PSⁿⁿ

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3049  1/01  (page 10 of 11 pages)
WVCMMA - 01232001                                                                      www.MortgageBankingSystems.com

Loan ID # 129585995

of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _Patrick S Morris_____ 8/15/06 (Seal)
                               PATRICK MORRISON                    -Borrower

_____        _Lorraine P Powell_____ 8/15/06 (Seal)
                               LORRAINE POWELL                     -Borrower

                               _____ (Seal)
                                                        -Borrower

                               _____ (Seal)
                                                        -Borrower

                               _____ (Seal)
                                                        -Borrower

                               _____ (Seal)
                                                        -Borrower

STATE OF WEST VIRGINIA,                    Berkeley County ss:

The foregoing instrument was acknowledged before me this August 15th, 2006 by
PATRICK MORRISON AND LORRAINE POWELL

My Commission Expires: July 12, 2012

                               _Bonita C. Ford_____
                               Notary Public

                               MERCY FERRO

_____
Preparer's Signature

WEST VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3049 1/01 (page 11 of 11 pages)
WVCMMD - 01231001                                                             www.MortgageBankingSystems.com

After Recording Return To:
HOMEBUILDERS FINANCIAL NETWORK, INC.
7900 MIAMI LAKES DRIVE WEST, SUITE 100
MIAMI LAKES, FL 33016

Prepared By:

——————————— [Space Above This Line For Recording Data] ———————————

Loan ID # 129585995
DOC ID #:                                                        MIN 1002876-0129585995-0

## InterestOnly ADJUSTABLE RATE RIDER

(Six-Month LIBOR Index (As Published in The Wall Street Journal) - Rate Caps)

THIS InterestOnly ADJUSTABLE RATE RIDER is made this     15th
day of August, 06     , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of
the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
MONOCACY HOME MORTGAGE, LLC
(the "Lender") of the same date and covering the property described in the Security Instrument
and located at:

228 MCWHARTON WAY, BUNKER HILL, WEST VIRGINIA 25413
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE
AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE I MUST PAY.

CONV
● BC-ARM Rider
FE-4279 (0603)                     Page 1 of 4                     Initials: LEl  PSm

Loan ID # 129585995

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.150 % or less than 9.150 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.150 % or less than 9.150 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after September 1st, 2011 .

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

CONV
● BC-ARM Rider
FE-4279 (0603)                    Page 3 of 4                    Initials: LEF PP2 M

Loan ID # 129585995

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of        9.150 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay will change on the        1st        day of   September, 2008        , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Eight and Fifteen one-hu   percentage points (        8.150%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

CONV
• BC-ARM Rider
FE-4279 (0603)                            Page 2 of 4                    Initials: LEP PS PR

Loan ID # 129585995

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____  8/15/06  (Seal)
PATRICK MORRISON                                - Borrower

_____  8/15/06  (Seal)
LORRAINE POWELL                                 - Borrower

_____           (Seal)
                                                - Borrower

_____           (Seal)
                                                - Borrower

CONV
• BC-ARM Rider
FE-4279-(0603)                  Page 4 of 4

## EXHIBIT A – LEGAL DESCRIPTION

The following described parcel of real estate, situate, lying and being in Mill Creek District, Berkeley County, West Virginia, being more particularly described as follows:

> Lot No. 157, Section 1, McCauley Crossing, as shown on that plat of Section 1, McCauley Crossing, recorded in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, in Plat Cabinet 10, Slide 147.

> TOGETHER WITH the nonexclusive right to use the streets and roadways for ingress and egress as shown on the aforesaid plat.

AND BEING that same real estate conveyed from Dan Ryan Builders, Inc., a Maryland corporation, to Patrick S. Morrison and Lorraine E. Powell, by Deed dated August 15, 2006, of record in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, immediately prior hereto.

SUBJECT TO any and all easements, rights-of-way, conditions, covenants and restrictions of record or in existence.

The address of the parties of the first part to which the notices required by West Virginia Code § 38-1-4 shall be mailed is:   228 McWharton Way, Bunker Hill, WV   25413

M1275.11189
1583381

*LEP PSm*

1579218.1

RECORD AND RETURN TO:
HOMEBUILDERS FINANCIAL NETWORK, INC.
7900 MIAMI LAKES DRIVE WEST, SUITE 100
MIAMI LAKES, FL, 33016

## DEED OF TRUST

MIN  1002876-0129586211-1
Loan ID # 129586211

THIS DEED OF TRUST is made this 15th day of August, 2006 , among the Grantor,
PATRICK MORRISON AND LORRAINE POWELL, HUSBAND AND WIFE AS JOINT TENANTS
LEP PRm E. LGP PRm

(herein "Borrower"), STEPHEN M. MATHIAS

, whose residence address is , , WEST VIRGINIA

, (herein "Trustee"), and the beneficiary, is Mortgage
Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and
Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MOROCACY
HOME MORTGAGE, LLC , ("Lender") is
organized and existing under the laws of MARYLAND , and has an
address of 75 TEONAS JOHNSON DRIVE, SUITE K, FREDERICK, MD 21702
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County of BERKELEY , State of West Virginia:

SEE ATTACHED LEGAL DESCRIPTION

which has the address of        228 MCWHARTON WAY,              BUNKER HILL
                                      (Street)                        (City)
West Virginia       25413        (herein "Property Address");
                   [ZIP Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and
apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of
Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a
leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds
only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law
or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any
or all of those interests; including, but not limited to, the right to foreclose and sell the Property; and to take
any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

Initials: LEP PRm

WEST VIRGINIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT        Amended 4/98
                                                                                Form 3849
WV2MM1 - 10032001                        Page 1 of 5                www.MortgageBankingSystems.com

EXHIBIT

B

Loan ID # 129586211

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated August 15th, 2006 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $71,850.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on September 1st, 2021 ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Initials: LEP PSr

Form 3849
www.MortgageBankingSystems.com

WV2MM1 - 10032001                     Page 2 of 5

Loan ID # 129596211

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6.   Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.   Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8.   Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9.   Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.  Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12.  Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13.  Governing Law; Severability. The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.  Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15.  Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender,

Initials: _LEP P m_

Form 3849

Loan ID # 129586211

at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including Borrower's failure to pay any sums secured by this Deed of Trust by the end of 5 calendar days after they are due, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17.

If Lender invokes the power of sale, Lender or Trustee shall mail to Borrower, in the manner provided in paragraph 12 hereof, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law and, when required by applicable law, shall cause such notice to be served personally upon Borrower or other persons. Trustee, without demand on Borrower, shall sell the Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine at public auction to the highest bidder for cash. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including, but not limited to, reasonable Trustee's fees and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

Initials: _LSP PS m_

WV2MM4 - 10032001          Page 4 of 5          Form 3849
www.MortgageBankingSystems.com

Loan ID # 129586211

20. Release. Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property.

23. Beneficiary's Address. The beneficial owner and holder of the Note at the time of execution and delivery hereof is 75 THOMAS JOHNSON DRIVE, SUITE K, FREDERICK, MD 21702 whose residence address is stated at the conclusion of the first paragraph of the first page of this Deed of Trust.

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____     _Patro Sttram_  8/15/06 (Seal)
                             PATRICK MORRISON          -Borrower

_____     _Lorraine E. Powell_  8/15/96 (Seal)
                             LORRAINE POWELL           -Borrower

                            _____ (Seal)
                                                       -Borrower

                            _____ (Seal)
                                                       -Borrower

                            _____ (Seal)
                                                       -Borrower

                            _____ (Seal)
                                                       -Borrower

                                        [Sign Original Only]


STATE OF WEST VIRGINIA,                _Berkely_ County ss:

The foregoing instrument was acknowledged before me this August 15th, 2006 by
PATRICK MORRISON AND LORRAINE POWELL

My Commission Expires _____ 12, 2012  _Benita C. Fre._
NOTARY PUBLIC                            Notary Public
STATE OF WEST VIRGINIA
BONITA C. FORD
Incorporated/Prepared by: MERCY FERRO
Martinsburg, WV 25401
Commission Expires July 12, 2012

————————— [Space Below This Line Reserved For Lender and Recorder] —————————

### DEED

THIS DEED made and entered into this 15th day of August, 2006, by and between, DAN RYAN BUILDERS, INC., a Maryland corporation, GRANTOR and party of the first part, and PATRICK S. MORRISON and LORRAINE E. POWELL, GRANTEES and parties of the second part.

WITNESSETH: That for and in consideration of the sum of Ten Dollars ($10,00), cash in hand paid, receipt of which is hereby acknowledged, and other good and valuable consideration, receipt of which is also hereby acknowledged, the party of the first part does hereby grant, bargain, sell and convey unto the parties of the second part, or to the survivor, as joint tenants and not as tenants in common, survivorship between said parties of the second part being hereby expressly intended, and upon the death of either of said parties his or her share to go to the survivor, with covenants of general warranty and against all liens and encumbrances, the following described parcel of real estate, together with all rights, privileges, improvements, rights-of-way and appurtenances thereunto belonging or in anywise appertaining, situate in Mill Creek District, Berkeley County, West Virginia, more particularly described as follows:

> Lot No. 157, Section 1, McCauley Crossing, as shown on that plat of Section 1, McCauley Crossing, recorded in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, in Plat Cabinet 10, Slide 147.

> Together with the nonexclusive right to use the streets and roadways for ingress and egress as shown on the aforesaid plat.

AND BEING part of that same real estate conveyed from Newbraugh-Ryan L.L.C., a West Virginia limited liability company, to Dan Ryan Builders, Inc., a Maryland corporation, by Deed dated October 7, 2005, and recorded in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, in Deed Book 813, at page 153.

THIS CONVEYANCE IS SUBJECT TO all public utility easements, rights-of-way, conditions, covenants and restrictions of record or in existence, including, but not limited to, those covenants and restrictions recorded in Deed Book 786, at page 269 and Deed Book 819, at page 241.

### DECLARATION OF CONSIDERATION OR VALUE

Under penalties of fine and imprisonment, as provided by law, I hereby declare that the total consideration paid for the real estate transferred by this document is $359,375.00.

WITNESS the following signatures and seals:

DAN RYAN BUILDERS, INC.,
a Maryland corporation

By: _____
Roger L. Riddle, Vice President

STATE OF VIRGINIA,

COUNTY OF FREDERICK, to-wit:

The foregoing instrument was acknowledged before me this 15th day of August, 2006, by

Roger L. Riddle, Vice President of DAN RYAN BUILDERS, INC., a Maryland corporation, on

behalf of the corporation.

My Commission Expires: 10-31-09

_____
NOTARY PUBLIC

THIS DOCUMENT PREPARED BY:

Stephen M. Mathias, Esquire
BOWLES, RICE, MCDAVID, GRAFF & LOVE LLP
P.O. Drawer 1419
Martinsburg, West Virginia 25402-1419

AFTER RECORDING MAIL TO:

Patrick S. Morrison
Lorraine E. Powell
228 McWharton Way
Bunker Hill, WV 25413

M1275.11189
1583371



*122105278*
11/09/2011
3331559024

This is a LEGAL COPY
of your check. You can
use it the same way
you would use the
original check.

RETURN REASON-C
STOP PAYMENT

STOP PAYMENT
Do Not Re-deposit

Bank of America

NO. 0000459654

08/24/2011     $*****12,639.44****

PAY  TWELVE THOUSAND SIX HUNDRED THIRTY-NINE DOLLARS AND 44 CENTS****

VOID AFTER 180 DAYS

PAY TO:  PATRICK MORRISON & LORRAINE POWELL **
         226 McWhorton Way *****************
         Bunker Hill, WV 25413

129585995

⑆00004596544⑆ ⑆121000358⑆ 12331⑈78938⑈

⑆0000459654⑆ ⑆121000358⑆ ⑆1233178936⑈ ⑆0001263944⑆

EXHIBIT
C



**EXHIBIT**

D

RECEIVED

MAY 1 1 2012

JEFFERSON COUNTY
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

      Plaintiff,

v.                       Civil Case No. 12-C- 1 8 1

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

      Defendants.

### PLAINTIFF'S FIRST SET OF COMBINED DISCOVERY REQUESTS TO DEFENDANT BANK OF AMERICA

Plaintiffs, by counsel and pursuant to the West Virginia Rules of Civil Procedure, respectfully requests that the Defendants answer the following interrogatories separately and fully in writing under oath within forty-five (45) days of the date of service hereof to the office of both counsel.

In answering these requests, furnish all information available to you, including information in the possession of your attorney, their investigators, or any person acting on your behalf and not merely such information as is known of your own personal knowledge.  If you cannot answer any part of these requests in full after exercising due diligence to secure the information requested, so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered or partially answered portion. These requests are to be considered to be continuing and you are requested to provide, by way of supplementary answers, such additional information as you or any person acting on your behalf may obtain that will augment or modify your initial answers.  Please treat all interrogatories as requests for production of documents under Rule 34, West Virginia Rules of Civil Procedure, where specific requests for production are made.



DEFENDANT'S EXHIBIT
A-4

As used herein, the following terms shall have the meanings indicated below:

(a)     "Person" means natural person, corporation, partnership, sole proprietorship, union association, federation, and any other kind of entity.

(b)     "Document" means any printed, typewritten, handwritten or otherwise recorded matters of whatever character, including without limitation: letters, minutes, purchase orders, bills, memoranda, telegrams, notes, catalogs, brochures, diaries, reports, calendars, interoffice communications, statements, announcements, photographs, tape recordings, motion pictures, and any carbon or photographic copies of such material if defendants do not have custody or control of the originals.

(c)     "Lender" means the entity by current or prior name.

In responding to these interrogatories, please comply with the following:

(a)     In each question wherein you are asked to "identify" a person, state with respect each such person his or her: (1) name, (2) last known address and telephone number, (3) last known business address and telephone number, (4) last known employer, together with said employer's address, and (5) relationship to you.

(b)     In each questions wherein you are asked to "identify" a document, state with respect to each such document: (1) its date, (2) the person originating it, (3) its current location, (4) the person in whose possession or under whose control the document is, and the relationship of said person to you, and (5) any other information necessary to identify the document sufficiently so that any appropriate formal motion to produce may, if necessary, be made.

(c)     If any document requested to be produced was but is no longer in defendants' possession or control, or is no longer in existence: (1) state whether it is: (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others, and if so, to whom or (d)

otherwise disposed of; and (2) with respect to each such document and disposition: (a) explain

the circumstances surrounding an authorization for such disposition and the approximate date

thereof; and (b) state any information available to you which might be helpful in locating

originals or copies of the documents in question.

　　　If you assert any privilege with respect to any document, with respect to each such

document: (1) identify it, (2) state the basis for the claim of privilege, (3) describe fully the

circumstances of the document's disposition, including identifying all persons whom you believe

have or may have seen it or become acquainted with its contents.

## INTERROGATORIES

　　　1.　　　State the name, address, and business position of each person who answered or

assisted in answering these interrogatories.

　　　2.　　　Who holds the Note on Plaintiff's home?

　　　3.　　　Who has possession of the original note?

　　　4.　　　Explain how you acquired servicing rights on the Plaintiff's loan.

　　　5.　　　Please identify every officer of employee of Defendant Bank of America who

performed any work activities that were in any way related to Plaintiff's loan(s) for the purchase

of his home.  State the job title for each individual identified and explain what work activities

were performed.

　　　6.　　　Please describe in detail every communication between Plaintiff and Defendant.

In response to this interrogatory, please state the name and job title of the person communicating

with Plaintiff, a summary of the communication, and the date on which said communication

occurred.

7.    Do you have any insurance policy that may cover the acts/omissions alleged in the Plaintiff's Complaint? If so, provide the declaration page and a copy of the policy.

8.    If the Defendant has any recordings of conversations between its employees and Plaintiff, please identify each such recorded conversation by date and time. Provide the name and employment position of any individual recorded speaking with Plaintiff.

9.    Identify by style of the case, case number and jurisdiction any claims filed in the last five years in state or federal court against Defendant which allege violations of the West Virginia Consumer Credit and Protection Act, W.Va. Code §46A-1-101 *et seq.*

## REQUESTS FOR PRODUCTION

1.    Copies of all contracts or documents evidencing any agreements between the Plaintiff and Defendant.

2.    Copies of the account records.

3.    Copies of records of all contact with the Plaintiff.

4.    Copies of any and all notices, correspondences, statements, or documents of any kind sent by Defendant to the Plaintiff.

5.    Copies of your account record maintenance policies applicable during the last five years.

6.    Copies of any and all documents that relate to any orders, consent agreements, or other written resolution of complaints from any local, state, or federal government agency, organization, or court, since January 1, 2007, related to residential home-secured lending in West Virginia.

7.    Copies of any and all documents that relate to any orders, consent agreements, or other written resolution of complaints from any local, state, or federal government agency,

organization, or court, since January 1, 2007, related to residential home-secured debt servicing

in West Virginia.

8.       Copies of any other writings or documents in the control of the Defendants

relevant to the subject matter of this action.

9.       Make available for viewing the original of the loan document (i.e., Note) executed

by Plaintiff together with any endorsements or allonges.


                                        Patrick Morrison
                                        By Counsel



Stephen G. Skinner (W.Va. Bar No. 6725)
Skinner Law Firm
P.O. Box 487
Charles Town, WV 25414
(304) 725-7029/Fax: (304) 725-4082
sskinner@skinnerfirm.com

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

     Plaintiff,

v.                  Civil Case No. 12-C- |8\

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

     Defendants.

## CERTIFICATE OF SERVICE

     I, Stephen G. Skinner undersigned counsel for Plaintiff in the above-styled matter, hereby certify that on this 11th day of May, 2012, I served a true and accurate copy of the foregoing *PLAINTIFF'S FIRST SET OF COMBINED DISCOVERY REQUESTS TO DEFENDNAT BANK OF AMERICA* by service with the Complaint.

Stephen G. Skinner

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

     Plaintiff,

v.                           Civil Case No. 12-C-181

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

     Defendants.

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

     Plaintiff, by and through counsel, moves this Court pursuant to Rule 55 of the West Virginia Rules of Civil Procedure for default judgment of liability against Defendant Bank of America ("BOA"). Defendant BOA has been properly served, but has failed to answer of otherwise appear. Plaintiff therefore requests that default judgment be granted.

                                                      Patrick Morrisson
                                                      By Counsel

Stephen G. Skinner (WV Bar #6725)
SKINNER LAW FIRM
P.O. Box 487
Charles Town, WV 25414
(304) 725-7029/Fax: (304) 725-4082
sskinner@skinnerfirm.com


DEFENDANT'S EXHIBIT
A-5

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

     Plaintiff,

v.                                 Civil Case No. 12-C-181

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

     Defendants.

### AFFIDAVIT FOR DEFAULT JUDGMENT

STATE OF WEST VIRGINIA
COUNTY OF JEFFERSON, to wit:

     Personally appeared before the undersigned, a Notary Public in and for the

County of Jefferson, State of West Virginia, **STEPHEN G. SKINNER**, who,

being duly sworn, deposes and says as follows:

     1.     I am counsel of record for the Plaintiff, Patrick Morrisson.

     2.     Defendant Bank of America, N.A. is a foreign business not

authorized to do business in West Virginia.  Defendant was served through the

West Virginia Secretary of State, who received service on May 16, 2012.

(Exhibit A).

     3.     Defendant BOA received the Complaint on May 21, 2012. (Exhibit

A).

     4.     Pursuant to Rule 12(a) of the West Virginia Rules of Civil Procedure,

the Defendant BOA had thirty (30) days from the date of service in which to file

a responsive pleading.  The thirty-day period expired for Defendant on or around

June 20, 2012.

     5.    No Answer has been served upon counsel for Plaintiff or filed in this

action, and the time for answering has expired.

     6.    The costs for this suit are $180.

Stephen G. Skinner

Taken, subscribed, and sworn to before me, a Notary Public in and for the County

of Jefferson, State of West Virginia, by **STEPHEN G. SKINNER** this 11th day of

July, 2012.

Notary Public

**AFFIX NOTARIAL SEAL:**

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
LINDA S DEARSTINE
40 WINDSOR DRIVE
CHARLES TOWN, WV 26414
My commission expires May 14, 2022

3

WV SOS – Business & Licensing – Service Of Process Search                          6/5/12 2:01 PM

# West Virginia Secretary of State — Online Data Services

## Business & Licensing
Online Data Services Help

## Service Of Process Search Item Detail

Back To Results | New Search

| Service Information | |
|---|---|
| **Civil Action** | 12-C-181 |
| **Defendant** | Bank of America, N.A. |
| **Agent** | |
| **City/State/Zip** | Plano , TX 25313 |
| **Country** | US - United States of America |
| **County** | Jefferson |
| **Service Date** | 5/16/2012 |
| **Delivery Information** | |
| **Certified Number** | 9171923790001000669219 |
| **Delivered Date** | 5/21/2012 1:40:00 PM |
| **Delivered** | YES |
| **Status Details** | DELIVERED (Complete list of USPS status descriptions) |
| **USPS Notice** | *USPS requires a signature whenever certified mail is returned to sender. When mail from the Secretary of State is returned, it is processed and signed by the state's central mailing office. If your mail was intended for a private entity (that is, anyone other than a state officer or agency) and the signature below is that of **Kathy Thomas, Deanna Karlen, State of West Virginia, or Central Mailing Office**, then your mail was NOT DELIVERED* |

WV SOS – Business & Licensing – Service Of Process Search                                           6/5/12 2:01 PM

~~and will be returned to the clerk of the appropriate court.~~
Click the image below to view full size or for printing. Right click and use
Save As... for saving to your computer.

**Signature
Image**



Back To Results | New Search

Printed from West Virginia Secretary of State Online Data Services web site: http://apps.sos.wv.gov

Tuesday, June 05, 2012 — 1:56 PM

© 2012 State of West Virginia

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

     Plaintiff,

v.                            Civil Case No. 12-C-181

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

     Defendants.

## JUDGMENT ORDER

This _____ day of _____, 2012, came counsel for the Plaintiff and the Court for a hearing on Plaintiff's Motion for Default Judgment against the Defendant for failure to Answer the Complaint.

After considering the Plaintiff's motion for default and upon the Affidavit of Stephen G. Skinner, counsel for the Plaintiff, the Court hereby finds that Defendant Bank of America, N.A. has not answered Plaintiff's Complaint, and the Court finds that the Motion for Default Judgment be **GRANTED**.

It is therefore **ORDERED** and **ADJUDGED** by this Court that the Plaintiff in this matter recover of the Defendant Bank of America, N.A. a sum and attorneys fees to be determined at a hearing set on _____, 2012, at __:__ .m.

The Clerk will enter the foregoing as of the day and date first above written and shall transmit attested copies to counsel for Plaintiff, Stephen G. Skinner at his address of Skinner Law Firm, P.O. Box 487, Charles Town, WV 25414.

 

_____
Honorable David Sanders
Judge of the Circuit Court of
Jefferson County, West Virginia

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

    Plaintiff,

v.                                 Civil Case No. 12-C-181

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

    Defendants.

### CERTIFICATE OF SERVICE

    I, Stephen G. Skinner, of the SKINNER LAW FIRM, do hereby certify that I have served *PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT and PROPOSED JUDGMENT ORDER,* by U.S. Mail, Postage Prepaid, this 19th day of July, 2012, upon the following:

        Bank of America, N.A.
        6400 Legacy Drive
        Plano, Texas  75024

                        Stephen G. Skinner WVSB 6725
                        SKINNER LAW FIRM
                        P.O. Box 487
                        Charles Town, WV  25414
                        304-725-7029/Fax: 304-725-4082
                        Counsel for Plaintiff

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

RECEIVED

**PATRICK MORRISSON,**

AUG 0 9 2012

    Plaintiff,

JEFFERSON COUNTY
CIRCUIT CLERK

v.                                       Civil Case No. 12-C-181

**BANK OF AMERICA, N.A. and
LORRAINE POWELL,**

    Defendants.

## JUDGMENT ORDER

    This _9th_ day of _August_, 2012, came counsel for the Plaintiff and the Court for a hearing on Plaintiff's Motion for Default Judgment against the Defendant for failure to Answer the Complaint.

    After considering the Plaintiff's motion for default and upon the Affidavit of Stephen G. Skinner, counsel for the Plaintiff, the Court hereby finds that Defendant Bank of America, N.A. has not answered Plaintiff's Complaint, and the Court finds that the Motion for Default Judgment be **GRANTED**.

    It is therefore **ORDERED** and **ADJUDGED** by this Court that the Plaintiff in this matter recover of the Defendant Bank of America, N.A. a sum and attorneys fees to be determined at a hearing set on

_Monday, August 20_____, 2012, at _3:00_ p.m.



DEFENDANT'S
EXHIBIT
A - 6

3 cc
- S. Skinner
- Bank of America
- L. Powell
8/10/12
AW

The Clerk will enter the foregoing as of the day and date first above

written and shall transmit attested copies to counsel for Plaintiff, Stephen G.

Skinner at his address of Skinner Law Firm, P.O. Box 487, Charles Town, WV

25414.

Honorable David Sanders
Judge of the Circuit Court of
Jefferson County, West Virginia

2

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**PATRICK MORRISSON,**

      Plaintiff,

v.                              **Civil Case No. 12-C-181**

**BANK OF AMERICA, N.A. and
LORRAINE POWELL,**

      Defendants.

**RECEIVED**

**AUG 2 8 2012**

JEFFERSON COUNTY
CIRCUIT CLERK

## FINAL JUDGMENT ORDER

This Court has under consideration Plaintiff Patrick Morrisson's *Motion for Entry of Default Judgment* ("Motion") against Defendant Lorraine Powell, through which Plaintiff has requested, by counsel, that this Court enter an Order awarding default judgment in its favor against Defendant Powell pursuant to West Virginia Rules of Civil Procedure Rule 55.

Upon proper and timely notice to all parties in interest, and having considered Plaintiff's motion and the remainder of the record in this matter, the Court finds that the Defendant Lorraine Powell has defaulted.

Accordingly, this Court finds that Defendant Powell is liable to the Plaintiff on the claim made against her on the Plaintiff's Complaint and the Plaintiffs are entitled to a judgment. Judgment is granted, and it is **ORDERED AND** ADJUDGED that Defendant Powell shall sign a quitclaim deed vesting full ownership in the Plaintiff within thirty days.



DEFENDANT'S
EXHIBIT
A-7

The Court, having been advised by the attorney for the Plaintiff, finds that

Plaintiff's claim against Defendant Powell has been resolved. There being no other

matters before the Court, this matter is dismissed with prejudice.

The Clerk will enter the foregoing as of the day and date first above written and

shall transmit attested copies to the persons below:

Enter:  8/28/12

JUDGE OF THE CIRCUIT COURT OF
JEFFERSON COUNTY, WEST VIRGINIA

4 cc's

The Hon. John W. Small
Clerk of Berkeley County
Berkeley County Courthouse
100 West King Street, Room 1
Martinsburg, WV 25401

Stephen G. Skinner, Esquire
P.O. Box 487
Charles Town, WV 25414
    *Counsel for Plaintiff*

Bank of America, N.A.
6400 Legacy Drive
Plano, Texas 25313
    *Defendant*

Lorraine Powell
43 Norbeck Drive
Bunker Hill, WV 25413
    *Defendant*

8·29·12

2

S. Skinner

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

PATRICK MORRISSON,

      Plaintiff,

v.

BANK OF AMERICA, N.A. and
LORRAINE POWELL,

      Defendants.

RECEIVED

AUG 2 8 2012

JEFFERSON COUNTY
CIRCUIT CLERK

Civil Case No. 12-C-181

### JUDGMENT ORDER AGAINST BANK OF AMERICA, N.A.

This Court has under consideration Plaintiff Patrick Morrisson's *Motion for Entry of Default Judgment* ("Motion"), through which Plaintiff has requested, by counsel, that this Court enter an Order awarding default judgment in its favor against Defendant Bank of America, N.A. ("BOA") pursuant to West Virginia Rules of Civil Procedure Rule 55.

Upon proper and timely notice to all parties in interest, and having considered Plaintiff's motion and the remainder of the record in this matter, including a hearing on August 20, 2012 in which Plaintiff was present and by counsel Stephen G. Skinner, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.      On August 15, 2006, Plaintiff and his then domestic partner, Lorraine Powell, signed a first Deed of Trust to secure financing in the amount of $287,500.00 and a second Deed of Trust to secure financing in the amount of $71,850.00 for the purchase of a home at 228 McWharton Way, Bunker Hill, Berkeley County, West Virginia ("the home").



2.      Plaintiff and Defendant Powell are each identified as "Borrowers" under the terms of the first Deed of Trust. The first Deed of Trust further identifies Plaintiff and Defendant Powell as "joint tenants."

3.      The Lender under both Deeds of Trust was Monocacy Home Mortgage, LLC.

4.      Plaintiff and Defendant Powell lived together in the home, and each paid a portion of the mortgage payment each month.

5.      The relationship between Plaintiff and Defendant Powell ended, and Defendant Powell moved out of the home in 2007.

6.      Defendant Powell stopped making payments on the loan, and Plaintiff was forced to assume the entire mortgage payment each month.

7.      The loans were assigned to The Bank of New York Mellon on or around March 24, 2011.

8.      Upon information and belief, Defendant BOA was the servicer of record for Plaintiff's loans in 2010, 2011, and 2012.

9.      Plaintiff fell behind on his loan payments when surgeries for injuries resulting from a car accident forced him to miss more than six months of work. Plaintiff's only income during that time was workers compensation.

10.     Plaintiff returned to work, but as the economy deteriorated, he lost his job in the construction industry, and was again unable to make full payments on his home loans.

11.      On April 15, 2011, Plaintiff received correspondence from a debt collector, Samuel I. White, P.C., stating that he should contact them immediately to reinstate his home loan.

12.      Upon inquiry, Plaintiff was told that the alleged past due debt on the loans was $14,247.00.

13.      On July 14, 2011, Plaintiff mailed a check in the amount of $14,247.00 to Defendant to BOA bring his loan payments current.

14.      The first Deed of Trust required that the Lender apply funds first to the outstanding principal balance under the note.

15.      The first Deed of Trust further specified that payments be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due for escrow.

16.      Despite the requirements under the Deed of Trust, Defendant BOA used a portion of Plaintiff's $14,247.00 payment to escrow items. Defendant BOA paid $1,588.69 for an outstanding hazard insurance bill and $841.62 for outstanding county taxes, a total of $2,430.31. Defendant BOA held $12,639.44 of the payment without applying it at all.

17.      On August 15, 2011, Plaintiff received a Notice of Trustee's Sale from Seneca Trustees, Inc., stating that the loan was accelerated and that a Trustee's Sale would be held on September 6, 2011. This correspondence confused Plaintiff, who believed he had brought his loan current with the prior payment of $14,247.00.

18.      Plaintiff again inquired about the amount allegedly deficient on his loan and was told that $7,291.00 would bring him current.

19.     On August 24, 2011, Defendant BOA reversed/refunded to Plaintiff $12,639.44, alleging that the amount was not sufficient to cover the delinquency on the loan.

20.     On August 31, Plaintiff withdrew $7,791.00 from his 401K account.  He incurred a tax penalty in the amount of $865.67 for this withdrawal.  Plaintiff forwarded the $7,791.00 to Defendant BOA.

21.     On September 13, 2011, Defendant BOA posted Plaintiff's payment of $7,791.00 to Plaintiff's account.

22.     On October 5, 2011, Defendant BOA reversed/refunded the amount of $7,791.00 to Plaintiff, again alleging that the amount was insufficient to cover the amount delinquent on the loan.

23.     On November 9, 2011, Plaintiff's bank received a "stop payment" order from Defendant BOA on the check for $12,639.44.

24.     On November 9, 2011, Plaintiff's bank also received a "stop payment" order from Defendant BOA on the check for $7,791.00.

25.     Plaintiff attempted to deposit these funds into his checking account, but the checks were refused.

26.     Plaintiff incurred fees for the return of these checks.

27.     On October 19, 2011, Defendant BOA posted payments from Plaintiff in the amount of $20,430.44, the sum of the two reversal checks, claiming that Plaintiff's loan was then current through October 1, 2011.

28.     Plaintiff instituted this civil action on or about May 11, 2012, by filing a

Complaint against the Defendants in the Circuit Court of Jefferson County, West Virginia.

29.     On May 16, 2012, Defendant BOA was served through the West Virginia

Secretary of State at the address 6400 Legacy Drive, Plano, Texas, 25313.

30.     Rule 12(a)(1) of the West Virginia Rules of Civil Procedure requires a

defendant to serve an Answer within thirty days of service of the Complaint, if such

service is made through an agent such as the Secretary of State. More than thirty days

have elapsed since the Summons and Complaint were served upon Defendant BOA.

Despite having been properly served, Defendant BOA has failed to answer the Complaint

or otherwise defend this action as required.

31.     The West Virginia Consumer Credit and Protection Act, §46A-1-101 *et

seq.*, ("WVCCPA") provides for statutory damages, as well as attorney fees and costs.

Each violation of the statute carries a statutory penalty of $100 to $1,000. Adjusted for

inflation, those penalties are $446.15 to $4,461.50.

Accordingly, it is **ADJUDGED** and **ORDERED** that Defendant Bank of America,

N.A. is liable to the Plaintiff on all claims made on the Plaintiff's Complaint and the

Plaintiff is entitled to a judgment. Judgment is granted as follows:

1.     Plaintiff's loan that is serviced by Defendant Bank of America, N.A. is
       hereby cancelled;

2.     The County Clerk of Berkeley County is ordered to and shall release the
       Deed of Trust on Plaintiff's home found at Deed Book 1971 page 489;

3.     Statutory damages from Defendant Bank of America, N.A. for four
       violations of the West Virginia Consumer Credit and Protection Act, *W.Va.*

5

Code §46A-1-101 et seq., in the amount of $18,646.24, plus statutory post judgment interest at seven percent (7%); and

4.     Attorney fees and costs in the amount of $20,000.000 with post judgment interest at seven percent (7%).

The Court, having been advised by the attorney for the Plaintiff, finds that all

Plaintiff's claims against Defendant BOA have been resolved.

The Clerk shall calculate the costs and enter judgment and the costs shall be taxed

against the Defendant Bank of America, N.A.

The Clerk will enter the foregoing as of the day and date first above written and

shall transmit attested copies to the parties below:

Enter:   8/28/12

4 cc's

JUDGE OF THE CIRCUIT COURT OF
JEFFERSON COUNTY, WEST VIRGINIA

The Hon. John W. Small
Clerk of Berkeley County
Berkeley County Courthouse
100 West King Street, Room 1
Martinsburg, WV 25401

A TRUE COPY
ATTEST
          LAURA E. STORM
          CLERK, CIRCUIT COURT
          JEFFERSON COUNTY, W.VA.

BY   B. Crell
DEPUTY CLERK

Stephen G. Skinner, Esquire
P.O. Box 487
Charles Town, WV 25414
                    Counsel for Plaintiff

Bank of America, N.A.
6400 Legacy Drive
Plano, Texas 25313
                    Defendant

Lorraine Powell
43 Norbeck Drive
Bunker Hill, WV 25413
                    Defendant
                         8-29-12 BC

6

RECEIVED

JUL 17 2012

JEFFERSON COUNTY
CIRCUIT CLERK

### IN THE CIRCUIT COURT OF
### JEFFERSON COUNTY, WEST VIRGINIA

**PATRICK MORRISSON**
    **Plaintiff**

vs.                 CIVIL ACTION NO.  12-C-181

**BANK OF AMERICA, N.A. and**
**LORRAINE POWELL**
    **Defendants**

### TRIAL COURT RULE 22  SCHEDULING ORDER

This **July 17, 2012**  it appears that the **Plaintiff** previously filed a **Motion For Default**

**Judgment** pursuant to Rule 22 of the West Virginia Trial Court Rules as follows:

[ ✓ ]    The movant shall  provide a proposed Order when filing the motion and
serve a copy upon all non-moving parties and this Court.  If a proposed
order has not already been provided, one must be served immediately.
Non-moving parties shall file written responses and a proposed Order
within **15 calendar days of the entry date of this Scheduling Order** and
serve copies on the moving party and this Court.  The moving party shall
have **10 calendar days from the date of service of the response** to file a
rebuttal memorandum, if desired.  Thereafter, the Court will rule upon the
motion.  Original proposed Orders shall be mailed by the respective
parties to the office of the Judge along with copies of their memoranda.
**DO NOT FAX ANY MOTIONS OR ORDERS.**

[ ]    Said motion is herewith set down for a hearing before this Court on the
_____ day of _____, 2012 at _____, ____.M.
*IT SHALL BE MOVANT'S OBLIGATION TO GIVE TIMELY NOTICE OF*
*SAID HEARING DATE AND TIME TO ALL PERSONS ENTITLED*
*THERETO UNDER THE RULES OF CIVIL PROCEDURE.*

The Clerk shall enter the following as and for the day and date first above written and
forward attested copies hereof to all counsel and pro se parties of record.

3 of 11

S. Skinner

Bank of America

L. Powell
       7.18.18 BC

David H. Sanders, Judge
Jefferson County Circuit Court

A TRUE COPY
ATTEST:

      LAURA E. STORM
      CLERK, CIRCUIT COURT
      JEFFERSON COUNTY, W.VA.

BY _____
    DEPUTY CLERK



DEFENDANT'S
EXHIBIT
A-9



JOHN C. SKINNER, JR.
STEPHEN G. SKINNER (DC, NY & WV)
ANDREW C. SKINNER (IL & WV)
LAURA C. DAVIS

# SKINNER
L A W   F I R M
WWW.SKINNERFIRM.COM

115 EAST WASHINGTON STREET
PO BOX 487
CHARLES TOWN, WV 25414-0487
(304) 725-7029/Fax (304) 725-4082

WRITER'S EMAIL:
sskinner@skinnerfirm.com

**RECEIVED**

SEP 0 4 2012

JEFFERSON COUNTY
CIRCUIT CLERK

September 4, 2012

Hon. Laura E. Storm
Clerk of the Circuit Court
Jefferson County Judicial Center
Charles Town, West Virginia 25414

RE:   Patrick Morrison v. Bank of America, N.A. and Lorraine Powell
      Civil Action No. 12-C-181

Dear Ms. Storm:

Please issue an Abstract of Judgment, for the Judgment Order that was entered on August 28, 2012, in the above-captioned matter. Enclosed is a check payable to your order in the amount of $5.00.

Should you have any questions or comments, please call. Thank you.

Very truly yours,

SKINNER LAW FIRM

Stephen G. Skinner

SGS/lsd
Enclosures
cc:   Patrick Morrison

*Per Linda, issue abstract on judgment order for Bank of America.*
*9.6.12 BC*



DEFENDANT'S
EXHIBIT
A-10

Number: 0110829                                         September 06, 2012

Received of   SKINNER LAW FIRM                                    $5.00

              POBOX 487
              CHARLES TOWN        WV 25414
The exact sum of Five Dollars and No Cents

For.......... ABSTRACT/BANK OF AMERICA
Payment type: CHECK        Check # 041374
Case number.: 12-C-181
Plaintiff...: PATRICK MORRISON
Defendant...: BANK OF AMERICA, N.A. ET AL (JDGMNT GRNTED 080912)

Transaction conducted at:          LAURA E. STORM, CIRCUIT CLERK
JEFFERSON COUNTY COURTHOUSE
CHARLES TOWN   WV   25414
                              Deputy _____
                                            RMC

Distribution to Accounts...
1001 CLERKS FEES - OTHER        5.00

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA   File

mld abstract to atny

9.6.12 *BC*

PATRICK MORRISON,
Plaintiff

vs.                                                    Case No.: 12-C-181

BANK OF AMERICA, N.A. and
LORRAINE POWELL,
Defendants.

## ABSTRACT OF JUDGMENT

On August 28, 2012,  in the above case, the court granted judgment in

Favor of Plaintiff: PATRICK MORRISON

Against Defendant: BANK OF AMERICA, N.A.

Money Award: $18,646.24;

Plus Attorney Fees and Court Costs: $20,000.00;

plus interest at the legal rate of 7% running from the date of judgment

on any unpaid balance until paid.

I certify that the above is a true abstract of the judgment order entered in the above case.

Date of Abstract: September 6, 2012                LAURA E. STORM, Clerk

                                                   By: Becky Chelle
                                                         Deputy

W.Va. Code §§38-3-4 et seq.; 50-6-1 et seq.; 50-3-2n(c)

SCA-C 702,8/96

CASE NO. 12-C-181                          OPENED 5/11/2012

JUDGE...    JUDGE DAVID M. SANDERS

PLAINTIFF.  PATRICK MORRISON
VS DEFENDANT. BANK OF AMERICA, N.A., ET AL (JDGMNT GRNTED 080912)

PRO ATTY..
DEF ATTY..  STEPHEN G SKINNER, ESQ.

PAGE#    DATE     MEMORANDUM...............

00001  5/11/12  cvl css info sht, rcpt 108606 $160.00, cvr ltr
00002  5/11/12  cmplnt; exhbts
00003  5/11/12  plntfs 1st st of cmbnd dscvry rqsts 4 dfndt bnk of amrca....
00004  5/11/12  ...css 1 davis
00005  5/11/12  smms, cmplnt & cmbnd dscvry rqsts 4 l powell rtnd 2 stcy 4..
00006  5/11/12  ...svcs 051512
00007  5/11/12  smms, cmplnt & cmbnd dscvry rqsts 4 bnk of amrca mld 2 sec..
00008  5/11/12  ...of stc 4 svcs 051512
00009  5/21/12  ltr frm sec of stc, smms, cmplnt & cmbnd dscvry rqst 4 bnk..
00010  5/21/12  ...of amrca acptd by sec of stc 051612, rcpt
00011  5/24/12  acknwldgmnt of rcpt of smms & cmplnt 4 l powell, rtn smns,..
00012  5/24/12  ...cvr ltr
00013  5/28/12  snl frm sec of stc, crt ml 4 bnk of amrca sgnd 052112 but...
00014  5/28/12  ...sphrx ls not rsmbls
00015  7/10/12  rcpt 109906 $374 stphen thomas & bsttle,...4 juns 2012 cpy
00016  7/11/12  mtn 4 entry of dflt jdgmnt, affdvt of dflt jdgmnt, attchmnts
00017  7/17/12  TRL CRT HLR 22 SCHDLNG ORD ENT 071712
00018  7/19/12  cos (plntif mtn 4 entry of dflt jdgmnt) s. skinner, cvr ltr
00019  8/03/12  JDGMNT CRDR ENT 080912 CV08-21/241)
00020  8/22/12  cpy of ltr 2 jdge, prpsd ord
00021  8/24/12  mtn 4 entry of dflt jdgmt
00022  8/24/12  ...ordr, cos s. skinner, cpy of ltr 2 jdg, cvr ltr
00023  8/28/12  JDGMNT ORD AGNST BNK OF AMERICA NA ENT 082312 CV08-22/72
00024  8/28/12  FNL JDGMNT ORD ENT 082812 CV08-22/71 ***FILE CLOSED***
00025  8/28/12  ...cos amrca prpsd jdgmnt ord agnst bnk of amrca & prpsd...
00026  8/28/12  ...fnl ord in brwn envlpe in bck of file)
00027  9/06/12  rqst 4 abstrct 4 jdgmnt agnst bnk of amrca, rcpt 110829 $5..
00028  9/06/12  abstrct 2 stcy 090612
00029  9/25/12  fax cnfrmtn 1 g price, fax cvr sht, dckt sht
00030  9/26/12  fax cvr frm j price (faxed rcprd docs 2 stcy 092612)



DEFENDANT'S
EXHIBIT
A-11